# SUPREME COURT OF THE UNITED STATES

## UNITED STATES *v.* JUVENILE MALE

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 09–940   Decided June 27, 2011

PER CURIAM.

The Court of Appeals in this case held that the require-
ments of the Sex Offender Registration and Notification
Act (SORNA), 42 U. S. C. §16901 *et seq.*, violate the *Ex
Post Facto* Clause of the Constitution, Art. I, §9, cl. 3,
when applied to juveniles adjudicated as delinquent before
SORNA's enactment. We conclude that the Court of Ap-
peals had no authority to enter that judgment because it
had no live controversy before it.

I

Respondent Juvenile Male was 13 years old when he
began sexually abusing a 10-year-old boy on the Fort
Belknap Indian Reservation in Montana. The abuse
continued for approximately two years, until respondent
was 15 and his victim 12. In 2005, respondent was
charged in the District of Montana with delinquency
under the Federal Juvenile Delinquency Act, 18 U. S. C.
§5031 *et seq.* Respondent pleaded "true" to charges that
he knowingly engaged in sexual acts with a child under
12, which would have been a federal crime had respondent
been an adult. See §§2241(c), 1153(a). The court sen-
tenced respondent to two years of juvenile detention,
followed by juvenile supervision until his 21st birthday.
Respondent was to spend the first six months of his post-
confinement supervision in a prerelease center. See
*United States* v. *Juvenile Male*, 560 U. S. ___, ___ (2010)
*(per curiam)* (slip op., at 1).

In 2006, while respondent remained in juvenile deten-

tion, Congress enacted SORNA.  120 Stat. 590.  Under
SORNA, a sex offender must "register, and keep the re-
gistration current, in each jurisdiction" where the offen-
der resides, is employed, or attends school.  42 U. S. C.
§16913(a).  This registration requirement extends to cer-
tain juveniles adjudicated as delinquent for serious sex
offenses.  §16911(8).  In addition, an interim rule issued by
the Attorney General mandates that SORNA's require-
ments apply retroactively to sex offenders convicted before
the statute's enactment.  72 Fed. Reg. 8897 (2007) (codi-
fied at 28 CFR pt. 72 (2010)); see 42 U. S. C. §16913(d).[1]

In July 2007, the District Court determined that re-
spondent had failed to comply with the requirements of
his prerelease program.  The court revoked respondent's
juvenile supervision, imposed an additional 6-month term
of detention, and ordered that the detention be followed by
supervision until respondent's 21st birthday.  560 U. S., at
___ (slip op., at 1–2).  At the Government's urging, and
over respondent's objection, the court also imposed a
"special conditio[n]" of supervision requiring respondent to
register and keep current as a sex offender.  *Id.*, at ___
(slip op., at 2) (internal quotation marks omitted); see Pet.
for Cert. 9 (noting the Government's argument in the
District Court that respondent should be required to regis-
ter under SORNA "'at least until'" his release from juve-
nile supervision on his 21st birthday).

On appeal to the Ninth Circuit, respondent challenged
this "special conditio[n]" of supervision.  He requested that
the Court of Appeals "reverse th[e] portion of his sentence

---

[1] On December 29, 2010, the Attorney General finalized the interim
rule.  See 75 Fed. Reg. 81849.  In *Reynolds* v. *United States*, No. 10–
6549, this Court granted certiorari on the question whether sex offend-
ers convicted before the enactment of SORNA have standing to chal-
lenge the validity of the Attorney General's interim rule.  562 U. S. ___
(2011); Pet. for Cert. in *Reynolds*, p. *i*.  *Reynolds* is slated to be heard
next Term.

requiring Sex Offender Registration and remand with instructions that the district court . . . strik[e] Sex Offender Registration as a condition of juvenile supervision." Opening Brief for Defendant-Appellant in No. 07–30290 (CA9), p. 25. Then, in May 2008, with his appeal still pending in the Ninth Circuit, respondent turned 21, and the juvenile-supervision order requiring him to register as a sex offender expired. 560 U. S., at \_\_\_ (slip op., at 2).

Over a year after respondent's 21st birthday, the Court of Appeals handed down its decision. 581 F. 3d 977 (CA9 2009), amended, 590 F. 3d 924 (2010). No party had raised any issue of mootness in the Ninth Circuit, and the Court of Appeals did not address the issue *sua sponte*. The court's opinion discussed only the merits and concluded that applying SORNA to juvenile delinquents who committed their offenses "before SORNA's passage violates the Ex Post Facto Clause." *Id.*, at 927. On that basis, the court vacated the District Court's condition of supervision requiring sex-offender registration and reporting. *Id.*, at 942. The United States petitioned for a writ of certiorari.

While that petition was pending, this Court entered a *per curiam* opinion in this case certifying a preliminary question of Montana law to the Montana Supreme Court. 560 U. S. \_\_\_ (2010). The opinion noted that a "threshold issue of mootness" might prevent us from reviewing the decision below on the merits. *Id.*, at \_\_\_ (slip op., at 2). We explained that, because respondent is "no longer . . . subject" to the District Court's "sex-offender-registration conditions," respondent must "show that a decision invalidating" those conditions "would be sufficiently likely to redress 'collateral consequences adequate to meet Article III's injury-in-fact requirement.'" *Id.*, at \_\_\_ (slip op., at 2–3) (quoting *Spencer* v. *Kemna,* 523 U. S. 1, 14 (1998)). We noted that by the time of the Ninth Circuit's decision, "respondent had become registered as a sex offender in

Montana." 560 U. S., at ___ (slip op., at 3) (internal quota-
tion marks omitted). Thus, "[p]erhaps the most likely
potential 'collateral consequenc[e]' that might be remedied
by a judgment in respondent's favor is the requirement
that respondent remain registered as a sex offender under
Montana law." *Ibid.* In order to ascertain whether a
decision invalidating the District Court's registration
conditions would enable respondent to remove his name
from the Montana sex-offender registry, the Court certi-
fied the following question to the Montana Supreme
Court:

> "Is respondent's duty to remain registered as a sex
> offender under Montana law contingent upon the
> validity of the conditions of his now-expired federal
> juvenile-supervision order that required him to regis-
> ter as a sex offender, or is the duty an independent
> requirement of Montana law that is unaffected by
> the validity or invalidity of the federal juvenile-
> supervision conditions?" *Id.*, at ___ (slip op., at 3)
> (citations omitted).

The Montana Supreme Court has now responded to our
certified question. See *United States* v. *Juvenile Male*, ___
P. 3d ___, 2011 WL 2162807 (2011). Its answer is that
respondent's "state law duty to remain registered as a sex
offender is not contingent upon the validity of the condi-
tions of his federal supervision order, but is an independ-
ent requirement of Montana law." *Id.*, at ___, 2011 WL
2162807,*1.

## II

It is a basic principle of Article III that a justiciable case
or controversy must remain "extant at all stages of review,
not merely at the time the complaint is filed." *Arizonans
for Official English* v. *Arizona*, 520 U. S. 43, 67 (1997)
(internal quotation marks omitted). "[T]hroughout the

litigation," the party seeking relief "'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer, supra,* at 7 (quoting *Lewis* v. *Continental Bank Corp.,* 494 U. S. 472, 477 (1990)).

In criminal cases, this requirement means that a defendant wishing to continue his appeals after the expiration of his sentence must suffer some "continuing injury" or "collateral consequence" sufficient to satisfy Article III. See *Spencer,* 523 U. S., at 7–8. When the defendant challenges his underlying *conviction,* this Court's cases have long presumed the existence of collateral consequences. *Id.,* at 8; see *Sibron* v. *New York,* 392 U. S. 40, 55–56 (1968). But when a defendant challenges only an expired *sentence,* no such presumption applies, and the defendant must bear the burden of identifying some ongoing "collateral consequenc[e]" that is "traceable" to the challenged portion of the sentence and "likely to be redressed by a favorable judicial decision." See *Spencer, supra,* at 7, 14.

At the time of the Ninth Circuit's decision in this case, the District Court's order of juvenile supervision had expired, and respondent was no longer subject to the sex-offender-registration conditions that he sought to challenge on appeal. 560 U. S., at ___ (slip op., at 2). As a result, respondent's challenge was moot before the Ninth Circuit unless he could "show that a decision invalidating" the District Court's order would likely redress some collateral consequence of the registration conditions. *Id.,* at ___ (slip op., at 2–3) (citing *Spencer, supra,* at 14).

As we noted in our prior opinion, one "potential collateral consequence that might be remedied" by an order invalidating the registration conditions "is the requirement that respondent remain registered" under Montana law. 560 U. S., at ___ (slip op., at 3) (internal quotation marks and brackets omitted). But as the Montana Supreme Court has now clarified, respondent's "state law

duty to remain registered as a sex offender is not contingent upon the validity of the conditions of his federal supervision order," 2011 WL 2162807, *1, and continues to apply regardless of the outcome in this case. True, a favorable decision in this case might serve as a useful precedent for respondent in a hypothetical lawsuit challenging Montana's registration requirement on *ex post facto* grounds. But this possible, indirect benefit in a future lawsuit cannot save *this* case from mootness. See *Camreta* v. *Greene*, 563 U. S. ___, ___ (2011) (slip op., at 16); *Commodity Futures Trading Comm'n* v. *Board of Trade of Chicago*, 701 F. 2d 653, 656 (CA7 1989) (Posner, J.) ("[O]ne can never be certain that findings made in a decision concluding one lawsuit will not some day . . . control the outcome of another suit. But if that were enough to avoid mootness, no case would ever be moot").

Respondent also argues that this case "cannot be considered moot in any practical sense" because, under current law, respondent may have "an independent duty to register as a sex offender" under SORNA itself. Brief in Opposition 6.[2] But the duty to register under SORNA is not a *consequence*—collateral or otherwise—of the District Court's special conditions of supervision. The statutory duty to register is, as respondent notes, an obligation that exists "independent" of those conditions. That continuing obligation might provide grounds for a pre-enforcement challenge to SORNA's registration requirements. It does not, however, render the current controversy regarding the validity of respondent's sentence any less moot.

Respondent further argues that this case falls within

---

[2] See 42 U. S. C. §16911(8) (SORNA applicable if the juvenile was "14 years of age or older at the time of the offense and the offense adjudicated was comparable to or more severe than aggravated sexual abuse (as described in section 2241 of title 18)"); 72 Fed. Reg. 8897 (codified at 28 CFR pt. 72) (SORNA's requirements extend to sex offenders convicted before the statute's enactment).

the established exception to mootness for disputes that are "'capable of repetition, yet evading review.'" *Id.*, at 8 (quoting *Weinstein* v. *Bradford*, 423 U. S. 147, 148–149 (1975) *(per curiam)*). This exception, however, applies only where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer*, *supra*, at 17 (internal quotation marks omitted). At the very least, respondent cannot satisfy the second of these requirements. He has now turned 21, and he will never again be subject to an order imposing special conditions of juvenile supervision. See, *e.g.*, *DeFunis* v. *Odegaard*, 416 U. S. 312 (1974) *(per curiam)*. The capable-of-repetition exception to mootness thus does not apply, and the Ninth Circuit lacked the authority under Article III to decide this case on the merits.

The petition for a writ of certiorari and respondent's motion to proceed *in forma pauperis* are granted. The judgment of the Court of Appeals is vacated, and the case is remanded with instructions to dismiss the appeal.

*It is so ordered.*

JUSTICE GINSBURG, JUSTICE BREYER, and JUSTICE SOTOMAYOR would remand the case to the Ninth Circuit for that court's consideration of mootness in the first instance.

JUSTICE KAGAN took no part in the consideration or decision of this case.