[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 24, 2004
THOMAS  K. KAHN
CLERK

_____

No. 03-11659

_____

D. C. Docket No. 02-20408 CR-NCR

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JOHN ORREGA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 24, 2004)

Before WILSON and KRAVITCH, Circuit Judges, and GOLDBERG[*], Judge.

KRAVITCH, Circuit Judge:

---

[*] Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

The issue in this appeal is whether the district court erred by granting a downward departure to defendant John Orrega, who pleaded guilty to using a means of interstate commerce to entice a minor to engage in sexual acts, in violation of 18 U.S.C. § 2422(b).

I.    BACKGROUND

On March 28, 2002, a special agent with the United States Secret Service ("agent") signed onto a Yahoo internet chat room using the undercover name of Hialeahnina13. Orrega contacted the agent and identified himself as a twenty-four year-old male. The agent told Orrega that she was a thirteen year-old female. Orrega initiated a sexually explicit conversation and asked Hialeahnina13 to meet so that they could have sex. The meeting did not take place due to logistical reasons.

Several weeks later, on April 23, 2002, the agent was signed into the Yahoo chat room under the name Hialeahnina13 when Orrega initiated another sexually explicit conversation. In addition, Orrega sent a real-time video feed via his web camera to Hialeahnina13. He also sent her a nude picture of himself. Orrega asked Hialeahnina13 if they could meet so that Hialeahnina13 could perform oral sex on him. The two agreed to meet behind a local supermarket that night at 8:00 p.m. Orrega stated that he would be driving a blue Volkswagen Jetta. Hialeahnina13

2

advised Orrega that her name was Jessica and that she would be wearing jeans, a white t-shirt, and a baseball hat.

That evening, Orrega entered the supermarket parking lot, driving a blue Volkswagen Jetta. Orrega called out "Jessica" to an undercover agent, who had positioned herself in the parking lot. The agent indicated that she was Jessica. Orrega then drove toward the agent. When he stopped, agents arrested Orrega. Orrega subsequently pleaded guilty to enticing a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b).

A probation officer prepared a presentence investigation report ("PSI"). The PSI gave Orrega a base offense level of 21, pursuant to U.S.S.G. §§ 2G1.1 and 2A3.2(a)(2). The PSI included a two-level enhancement pursuant to U.S.S.G. § 2A3.2(b)(3) because a computer was used to entice a minor to engage in sexual conduct. Orrega received a two-level reduction for his acceptance of responsibility and a one-level reduction based on his timely provision of information to the government, which resulted in an adjusted offense level of 20. With a criminal history category of I, his Guidelines range was 33 to 41 months. The PSI noted that, although Orrega was technically eligible for a downward departure pursuant to U.S.S.G. § 5K2.20 for aberrant behavior, such a departure was not appropriate in this case.

The district court accepted all of the PSI's recommendations except the denial of the downward departure. Instead, the district court granted Orrega a downward departure on the grounds that his conduct constituted aberrant behavior. The district court reasoned that Orrega had no previous criminal record, worked, and attended school to better himself. On the basis of these facts, the district court concluded that this is a "textbook example of aberrant behavior," and sentenced Orrega to five years probation. The United States appeals the grant of the downward departure.[1]

## II.  DISCUSSION

### A.  Mootness

As an initial matter, we must decide whether Orrega's deportation moots this appeal. The mootness doctrine derives from the Constitution's requirement that federal courts decide only "cases" and "controversies." U.S. Const. art. III, § 2. A moot case must be dismissed because it "cannot be characterized as an active case or controversy." Adler v. Duval County Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997). There continues to be an active controversy in this case because Orrega may, at some point, re-enter the United States.[2] This possibility of re-entry, although speculative, prevents the government's appeal from being moot. See United States v. Villamonte-

---

[1] Orrega was deported during the pendency of the government's appeal.

[2] Although not dispositive, this possibility of re-entry is made more likely by the fact that Orrega lived in the United States for most of his life, and his entire family is in this country.

4

Marquez, 462 U.S. 579, 581 n.2 (1983) ("That respondents have been deported likewise does not remove the controversy involved. Following a reversal of the Court of Appeals, there would be a possibility that respondents could be extradited and imprisoned for their crimes, or if respondents manage to re-enter this country on their own they would be subject to arrest and imprisonment for these convictions."). Villamonte-Marquez shows that, because Orrega could face further proceedings upon re-entering the country, this appeal is not moot. We therefore hold that the government's appeal of Orrega's sentence is not rendered moot by the fact that Orrega was deported during the pendency of the appeal. See United States v. Suleiman, 208 F.3d 32, 38 (2d Cir. 2000) (holding that the "possibilities of extradition or re-entry into the United States are precisely the kind of circumstances . . . [that prevent] deportation from mooting a Government criminal appeal seeking an enhanced sentence"); United States v. Diaz-Diaz, 135 F.3d 572 (8th Cir. 1998) (holding same, but focusing on the possibility of re-entry as preventing mootness); United States v. Barajas-Nunez, 91 F.3d 826 (6th Cir. 1996) (holding that the possibility of re-entry prevents the government's appeal of the defendant's sentence from being moot); United States v. Valdez-Gonzalez, 957 F.2d 643 (9th Cir. 1992) (holding that the possibilities of extradition and re-entry prevent the government's appeal of the defendant's sentence from being considered moot).

B. Downward Departure

A district court may only depart from the Sentencing Guidelines when there is an "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). When making this determination, the court may "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." Id. Our review of a district court's grant of a departure from the Sentencing Guidelines is de novo, even if, as here, the appeal was pending at the time the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today ("PROTECT") Act took effect. United States v. Saucedo-Patino, 358 F.3d 790, 792-93 (11th Cir. 2004); see 18 U.S.C. § 3742(e)(4).

In this case, the district court granted a downward departure on the basis that Orrega's actions constituted aberrant behavior. Such a departure is permissible "in an *extraordinary case* if the defendant's criminal conduct constituted aberrant behavior." U.S.S.G. § 5K2.20 (2002) (emphasis added). But, such a departure is not permissible if "(1) the offense involved serious bodily injury or death; (2) the defendant discharged a firearm or otherwise used a firearm or a dangerous weapon; (3) the instant offense of conviction is a serious drug trafficking offense; (4) the defendant has more than one criminal history point . . . ; or (5) the defendant has a

6

prior . . . conviction." Id. Thus, in order to qualify for an "aberrant behavior" departure, (1) the case must be "extraordinary," (2) the defendant's conduct must constitute "aberrant behavior," *and* (3) the defendant cannot be disqualified by any of the five listed factors.

A defendant's conduct is aberrant behavior if that conduct constitutes a "single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life."[3] U.S.S.G. § 5K2.20, cmt. n.1 (2002). In addition, when determining whether it should depart on the basis of aberrant behavior, the district court "may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." U.S.S.G. § 5K2.20, cmt. n.2 (2002).

---

[3] We note that the Sentencing Commission stated it "intends that the phrases 'single criminal occurrence' and 'single criminal transaction' will be somewhat broader than 'single act,' but will be limited in potential applicability to offenses (1) committed without significant planning; (2) of limited duration; and (3) that represent a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. Supp. to App. C., cmt. to amend. 603 at 77 (2002). Thus, the enumerated criteria modify "single criminal occurrence" and "single criminal transaction;" they are not elements of what constitutes aberrant behavior.

On appeal, we must decide whether this is an "extraordinary case" and, if so, whether Orrega's conduct constitutes aberrant behavior under the guideline.[4]  This case does not appear to be extraordinary.  Rather, when compared to other § 2422(b) cases, this case is ordinary and is within the "heartland," see Koon v. United States, 518 U.S. 81 (1996) (noting that a departure from the Sentencing Guidelines is only appropriate if the case is outside the "heartland" of typical cases embodied by the guideline), of typical cases covered by the applicable guideline.  See, e.g., United States v. Panfil, 338 F.3d 1299 (11th Cir. 2003); United States v. Miranda, 328 F.3d 1322 (11th Cir. 2003).[5]  In each of these cases, the defendant contacted, via the internet, an undercover agent who was portraying a minor.  Thus, the fact that Orrega contacted an agent and not a minor does not make this case extraordinary.  Moreover, the facts in this case are more egregious than those in Panfil because, here, Orrega not only contacted the undercover agent, but also sent a video feed and a naked picture of himself to the agent.

---

[4] It is undisputed that Orrega is not disqualified from receiving an aberrant behavior departure by any of the five factors listed in the guideline.

[5] The latter of these two cases, Panfil, is almost identical to this case.  There, the defendant contacted an undercover agent who had signed into a Yahoo internet chat room under the name Hialeahnina13, the same name as that used by the agent in this case.  Moreover, just as in this case, the agreed meeting place in Panfil was a local grocery store.  Panfil, 338 F.3d at 1300.

In addition, none of the factors considered by the district court are extraordinary. The defendant produced no evidence of mental or emotional problems or of his prior good works, and he made no effort to mitigate the effects of the offense. His motivation for committing the offense was to satisfy his sexual desires at the expense of a thirteen year-old girl. Although Orrega went to school and was gainfully employed as a waiter in a family owned restaurant, these factors are not extraordinary.[6]

Even assuming that this case is "extraordinary," we would reverse the district court's grant of a downward departure because Orrega's conduct does not constitute aberrant behavior. This case involves more than a "single criminal occurrence or single criminal transaction." Orrega had two ninety-minute conversations with the undercover agent almost a month apart and, in each, he requested that they engage in sexual acts. 18 U.S.C. § 2422(b) criminalizes any attempt to entice a minor to engage in a sexual act. By attempting to entice a person he believed to be a minor to commit sexual acts during each conversation, Orrega committed two criminal acts. The

---

[6] The district court may also have considered Orrega's lack of criminal history when it granted the downward departure. The Guidelines, however, already take a defendant's criminal history into account in the criminal history category. Thus, reliance on a defendant's lack of criminal history is impermissible. See United States v. Davis, 204 F.3d 1064, 1066 n.1 (11th Cir. 1999) (per curiam). The record is not so compelling that we can conclude that the district court actually relied on Orrega's lack of criminal history in granting the downward departure, but such reliance would be inappropriate.

commission of two criminal acts by Orrega bars him from receiving an aberrant behavior departure.

Moreover, this crime was not "committed without significant planning," nor was it "of limited duration."[7] See U.S.S.G. Supp. to App. C., cmt. to amend. 603 at 76-77 (2002) (stating that the phrases "'single criminal occurrence' and 'single criminal transaction' . . . will be limited in potential applicability to offenses (1) committed without significant planning; (2) of limited duration; and (3) that represent a marked deviation by the defendant from an otherwise law-abiding life"). "Significant planning" is not defined by § 5K2.20,[8] but, we need not decide the specific parameters of a crime that was "committed without significant planning" because Orrega's conduct goes beyond the maximum amount of planning that would allow an aberrant behavior departure. Orrega (1) initiated two conversations with a person he believed to be a minor; (2) requested that the person perform sexual acts

---

[7] Orrega engaged in two conversations of ninety minutes each. In the circumstances of § 2422(b), such extended conversations cannot be considered "of limited duration."

[8] When reviewing aberrant behavior departures prior to the 2000 amendments to the Sentencing Guidelines, we stated that the crime must be a "'spontaneous and thoughtless act rather than one which was the result of substantial planning.'" E.g., United States v. Pickering, 178 F.3d 1168, 1172 (11th Cir. 1999) (quoting United States v. Withrow, 85 F.3d 527, 531 (11th Cir. 1996)). These cases, however, are not applicable under the current Guidelines. The Sentencing Commission expressly considered whether an aberrant behavior departure should only be available in cases that involve "a single act that was spontaneous and seemingly thoughtless," but "concluded that this application of the current language . . . is overly restrictive and may preclude departures for aberrant behavior in circumstances in which such a departure might be warranted." U.S.S.G. Supp. to App. C., cmt. to amend. 603 at 76-77 (2002).

on him; (3) sent a naked picture of himself to the person; (4) set up a meeting place; (5) discussed how he would recognize the "minor" and how the "minor" would recognize him; and (6) drove to the meeting place. Such facts certainly do not indicate that the crime was "committed without significant planning."

Finally, we note that, at sentencing, the district court judge expressed a dislike of sting operations, calling them "make believe crimes." Although the district court may express such feelings, "the district court is bound to impose a sentence within the guidelines, whether the guideline sentence sits well with it or not." United States v. Onofre-Segarra, 126 F.3d 1308, 1311 (11th Cir. 1997). To the extent that the district court judge based the downward departure on his dislike of this type of case, that decision was an error.

III.   CONCLUSION

We hold that the government's appeal of Orrega's downward departure is not mooted by the fact that Orrega has been deported. In addition, we hold that the district court erred by granting a downward departure under the facts of this case. We vacate Orrega's sentence and remand the case to the district court with instructions to impose a sentence in accordance with this opinion.

VACATED and REMANDED.